IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|   |   |   |
|---|---|---|
| Rea L Maddox, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. H-04-4395 |
| | ) | |
| CHCA East Houston, LP, d/b/a, East Houston Regional Medical Center, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Before the court is a motion by the Defendant, CHCA East Houston, LP, D/B/A East Houston Regional Medical Center (CHCA), for summary judgment against the Plaintiff, Rea L. Maddox (Maddox). Doc. 15. Maddox filed a response. Doc. 16. CHCA filed a reply. Doc. 19.

The motion for summary judgment by CHCA East Houston, LP, D/B/A East Houston Regional Medical Center is GRANTED. Doc. 15.

### BACKGROUND

On November 16, 2004, Maddox filed suit against her former employer, CHCA, alleging that it violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e, *et seq.* (Title VII). Specifically, Maddox complained of three violations of Title VII: First, she claimed that her race motivated her supervisor to schedule her for fewer shifts. Second, she claimed that a hand-written note protesting her treatment motivated her supervisor to issue a written

reprimand and to suspend her in violation of CHCA's a disciplinary policy. Third, she alleges that CHCA terminated her employment in retaliation for her previous complaints.

CHCA employed Maddox as a Respiratory Therapist from November 14, 1996 until October 6, 2003. Maddox was responsible for monitoring patients and performing various tests and completing all of her work within her shifts. David Villarreal (Villarreal) supervised her. Maddox is African-American and Villarreal describes himself as Hispanic and Filipino.

Maddox filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on March 12, 2003 for discriminatory scheduling and a retaliatory suspension. On her charge, she identified an address on East Barbara Circle in Houston, Texas as her own. The EEOC could not determine that CHCA had violated the relevant statute and issued a "notice of suit rights." The letter was dated July 26, 2003 and addressed to Maddox at East Barbara Circle. However, the letter dated July 26, 2003 was returned to the EEOC. It sent a copy of the letter to Maddox again in early September 2003. In March 2004, Maddox lost her home in a foreclosure. However, no evidence establishes precisely when Maddox received the letter from the EEOC.

After Maddox was terminated on October 6, 2003, she filed a second charge of discrimination. She alleged that CHCA had retaliated against her for her earlier charge of discrimination. CHCA stated that it terminated Maddox because she failed to properly tend to a patient, LG, on September 25, 2003. The witnesses to the care that LG received, including Maddox, dispute whether Maddox cared for patient LG properly and why Maddox cared for LG as she did. However, it is undisputed that hospital records show:

- A doctor ordered "Stat ABG's"[1] for patient LG at 1:50 on September 25, 2003.

---

[1] "ABG" stands for "arterial blood gas," a procedure used to evaluate the effectiveness of oxygen therapy.

- Affidavit of Carla Ruffins, Exhibit 2 at Bates No. Maddox 1781.

- "RLM," i.e., Rea L. Maddox, performed an ABG on patient LG at 3:15 a.m. on September 25, 2003. Id., Exh. 6 at Bates No. Maddox 0146.

- The results of an ABG from patient LG were presented to a doctor at about 4:05 a.m. Id., Exh. 3 at Bates No. Maddox 1799.

- A doctor ordered "ABG's in 30 min" for patient LG at 4:05 a.m. Id., Exh. 2 at Bates No. Maddox 1782.

- No notations appear on the nursing notes for patient LG of any further attempts to take an ABG until 7:35 a.m. Id., Exh. 3 at Bates No. Maddox 1799 and Id., Exh. 6 at Bates No. Maddox 1006.

- The ventilator sheet, a record of care that patient LG received, indicates that Maddox paid some attention to her at 4:25 a.m. and 6:25 a.m., but not that she performed an ABG or attempted to perform an ABG. Id., Exh. 1.

- Other ventilator sheets show that Maddox attended to other patients at 5:00 a.m., 5:25 a.m., 6:00 a.m., 6:15 a.m., and 6:30 a.m. Id., Exh 4.

- "RLM" and "R. Maddox," i.e., Rea L. Maddox, took ABGs from other patients on September 25, 2003 at 5:29 a.m., 5:50 a.m.; and 6:22 a.m. Id. Exh. 5 at Bates No. Maddox 1689, 1690, and 1691.

Villarreal and another staff member investigated Maddox's failure to take an ABG from patient LG. They reviewed records and interviewed some witnesses, but not others. Ultimately, they concluded that CHCA should end Maddox's employment on October 6, 2003.

## LEGAL ANALYSIS

CHCA argues that the claims Maddox raised in her first charge of discrimination cannot form the basis of a cause of action because they are time-barred and that the claim of retaliatory discharge cannot succeed because Maddox has no evidence of a causal connection between her original complaint and her termination.

A party moving for summary judgment must inform the court of the basis of the motion and identify those portions of the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, that show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the party moving for summary judgment bears the burden of proof on an issue, either as a plaintiff or as a defendant asserting an affirmative defense, then that party must establish that no dispute of material fact exists regarding any of the essential elements of the claim or defense to warrant judgment in his favor. *Fontenot v. Upjohn*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the moving party fails to meet its initial burden, the motion must be denied, regardless of the adequacy of any response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment because the substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby*, 477 U.S. 248, 256-57 (1986). The moving party need not negate the opposing party's claims nor produce evidence showing the absence of a genuine issue of fact, but may rely on the absence of evidence to support essential elements of the opposing party's claims. *Celotex*, 477 U.S. at 323-25. However, "[o]n summary judgment the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (citing *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)). A party seeking summary judgment may rely upon the complete absence of proof of an essential element if (1) the party seeking summary judgment has no access to evidence of disproof, (2) ample time has been allowed for discovery, and (3) the party opposing the motion for summary judgment bears the proof burden. *Fontenot,* 780 F.2d at 1195.

If the moving party establishes the absence of any dispute of material fact, then the burden then shifts to the opposing party to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The party opposing a motion for summary judgment may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence, and specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 256-157. The non-moving party may identify evidentiary documents already in the record that establish specific facts showing the existence of a genuine issue. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

Furthermore, the party opposing a motion for summary judgment does not need to present additional evidence, but may identify genuine issues of fact extant in the summary judgment evidence produced by the moving party. *Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 198-200 (5th Cir. 1988).

**I. MADDOX'S CLAIMS FOR DISCRIMINATORY SCHEDULING AND HER SUSPENSION ARE TIME-BARRED.**

Before filing suit under Title VII, a potential plaintiff must file a charge of discrimination with the EEOC or an appropriate state administrative agency. 42 U.S.C. § 2000e-5(b), *Gupta v. East Texas State University,* 654 F2d 411 (5th Cir. 1981). After filing a charge of discrimination, the EEOC must file suit itself or declining to pursue the matter. 42 U.S.C. § 2000e-5(b). If the EEOC issues a letter declining to take any further action, the employee may file suit within ninety days. 42 U.S.C. § 2000e-5(b)(f)(1).

The period in which the employee may file suit runs from the time that the employee receives the notice. *Bunch v. Bullard,* 795 F.2d 384, 388 (5th Cir. 1986). Usually,

"the giving of notice to the claimant at the address designated by him suffices to start the ninety-day period[.]" *Espinoza v. Missouri Pacific R. Co.,* 754 F.2d 1247, 1250 (5th Cir. 1985). Unless an employee presents evidence to the contrary, courts have presumed that an employee receives a notice of her right to sue between three and seven days after the EEOC mails it to the address provided by the employee. See, e.g., *Taylor v. Books A Million, Inc.,* 296 F.3d 376 (5th Cir. 2002).

By compelling an employee to sue within ninety days, "[t]he statutory plan is to keep claims fresh. When the aggrieved party knows EEOC has completed its efforts, the time for suit has come and the statute fixes its season as 90 days. This is a protection to the employer and is plainly there for its benefit alone." *Zambuto v. American Tel. & Tel. Co.,* 544 F.2d 1333, 1335 (5th Cir. 1977). However, the "ninety-day period is akin to a statute of limitations, and is subject to equitable tolling," *Espinoza,* 754 F.2d at 1250. Because it is "akin to a statute of limitations," when the employee, "through no fault of his own, failed to receive the right-to-sue letter or unless, for some other equitable reason, the statute should be tolled until he actually receives notice." *Id.* Equitable tolling can be justified "(1) where notice from the EEOC does not adequately inform plaintiff of the requirement that suit be commenced within the statutory period; (2) where a motion for appointment of counsel is pending; (3) where the court itself has led plaintiff to believe that she has satisfied all statutory prerequisites to suit; and (4) where the defendant has, through affirmative misconduct, lulled the plaintiff into inaction." *Id.,* at 1251 (citing *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 151 (1984) (*per curiam*)).

In this case, Maddox seeks to pursue claims that appear stale by at least eight months, if not one year. The only evidence before the court shows that Maddox should have received the notice from the EEOC no later than the middle of September 2003. Specifically,

6

Maddox owned the home to which she directed the EEOC to send its notices until almost seven months after the EEOC mailed its notice a second time. Likewise, no evidence suggests that she was away from her home for an extended period of time since she continued to work for CHCA until more than a month after the EEOC mailed her notice a second time. The mere possibility that Maddox might have received a letter several months after the postal service ordinarily would have delivered it is precisely the sort of highly improbable event that cannot raise a dispute of material fact to defeat a motion for summary judgment. Maddox must present some admissible evidence explaining why she might have received a letter only after such a lengthy delay. Without such evidence, this court cannot find any dispute of material fact that would justify submitting the question of when Maddox received notice of her right to sue to a jury.

Notwithstanding the expiration of her right to sue, Maddox argues that her second charge of discrimination extended the time in which she could file suit for the events described in her first charge of discrimination because she incorporated those events by reference. However, merely referring to a previous charge of discrimination establishes only the factual basis for a claim of retaliation. Allowing a plaintiff to base a lawsuit on events described in a charge of discrimination, no matter how old, if a subsequent charge of discrimination referred to that previous charge would violate the purpose of the 90-day limit which, as explained in *Zambuto,* exists for the benefit of the employer "to keep claims fresh."  544 F.2d at 1335. Whether Maddox incorporated previous charges into new charges, the previous charges were anything but fresh by the time Maddox filed suit. Her incorporation by reference of stale claims into a new charge does not refresh them and cannot enable her to recover damages for lost shifts or an unjust suspension.

**II. NO EVIDENCE SUPPORTS MADDOX'S CLAIMS FOR RETALIATORY DISCHARGE.**

To survive summary judgment on a retaliation claim plaintiff must make a *prima facie* showing that: (1) that the plaintiff engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action. *Banks v. East Baton Rouge Parish Sch. Bd.,* 320 F.3d 570, 575 (5th Cir. 2003). A "protected activity" is "opposition to any practice rendered unlawful by Title VII, including making a charge[.]" *Ackel v. National Communications Inc.,* 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Green v. Administrators of the Tulane Educational Fund,* 284 F.3d 642, 657 (5th Cir. 2002). At the summary judgment stage, the plaintiff "must produce some evidence of a causal link between the protected activity and the adverse employment action." *Ackel,* 339 F.3d at 385 (citing *Fierros v. Tex. Dep't of Health,* 274 F.3d 187, 191 (5th Cir. 2001)). "The proper standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred 'but for' her protected conduct." *Septimus v. University of Houston,* 399 F.3d 601, 608 (5th Cir. 2005) (citations omitted). To establish that a plaintiff would have been retained "but for" her decision to engage in protected activities, she must do more than establish that the protected activity was a "motivating factor" for the employee's termination. *Id.* The greater the time that elapses between the protected activity and the termination, the less suspect the decision to terminate becomes. *E.E.O.C. v. Kohler Co.,* 335 F.3d 766 (8th Cir. 2003). "[O]nce the plaintiff establishes a *prima facie* case of unlawful retaliation, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action, [then] the plaintiff must then 'adduce sufficient evidence that would permit a reasonable trier of fact to find that the

proffered reason is a pretext for retaliation.'"  *Rios v. Rossotti,* 252 F.3d 375, 380 (5th Cir. 2001) (citing *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir.1998)).

In this case, Maddox filed a charge of discrimination with the EEOC in March 2003 and was terminated after doing so, thereby satisfying the first two elements of her prima facie case.  However, she has not presented evidence of a causal connection between the events other than *post hoc ergo propter hoc.*  Given the seven-month gap between the protected activity, Maddox's failure to identify any person whom CHCA retained despite failing to care for a patient as a directed by a physician, and the absence of any other evidence, a jury would have no evidence upon which to base a conclusion that Maddox would have retained her job, but for her earlier complaints.

Instead of presenting evidence of a causal connection between her complaints to the EEOC and her termination, Maddox identifies a number of factors that diminish her culpability for her failure to take an ABG from LG.  Some factors were peculiar to the specific situation in which she found herself.  For example, she states that she attempted to take an ABG for half an hour, that she performed an emergency EKG, and that Villarreal failed to conduct a thorough investigation of her reasons for failing to take an ABG.  Other factors were inherent in her working environment.  For example, she claimed that no one trained her how to prioritize between patients.  However, Maddox does not dispute that she failed to take an ABG from LG despite a doctor's orders to do so.  Similarly, she does not identify a single instance of CHCA retaining an employee who failed to take an ABG from a patient.  Consequently, this court has no evidence on which to base a comparison of how Maddox was disciplined to how other employees were disciplined, no reason to doubt CHCA's evidence that Respiratory Therapists must take ABG's promptly, and no basis for concluding that Maddox's degree of culpability

9

might have made any difference in the decision of CHCA to terminate her employment. Expecting an employee to perform tasks for which she has not been trained may be unfair and unreasonable to the employee, or even economically irrational for the employer, but their ability to perform unreasonably difficult tasks or terminate employees for failing to perform such tasks, no matter how little culpability the employee may bear. Thus, the lack of any evidence establishing a causal connection between the complaint Maddox filed and her termination defeats her attempt to present a *prima facie* case.

Moreover, CHCA articulated and presented evidence establishing a legitimate, non-discriminatory reason for terminating Maddox. Thus, even if Maddox presented a *prima facie* case of discrimination, the burden would still rest on her to provide some evidence supporting the conclusion that the reasons that CHCA offered are a pretext for retaliatory motives. The Supreme Court has held that a jury may infer that an employer's reasons for terminating an employee were a pretext for an improper motive when the employee presents evidence showing that the employer's reasons for terminating her were false. *Reeves v. Sanderson Plumbing Products,* 530 U.S. 133 (2000). In *Reeves,* the employer accused an older employee of falsifying time records and terminated him. However, it did not fire a much younger employee whom it also accused of the same impropriety. The jury apparently believed the older employee's evidence that he had not falsified his time records and concluded that the employer had engaged in age discrimination. Thus, *Reeves* may require juries to determine whether the events used to justify an employee's termination actually happened or whether an employer applied its criteria evenly. However, *Reeves* is not an invitation for plaintiffs to argue that a firing, based on undisputed facts, is unjustified or that subjecting employees to a harsh standard of performance is a pretext for retaliation. Likewise, *Reeves* does not elevate every

factual discrepancy into a question of material fact. The facts construed in the light most favorable to the plaintiff must still establish that an employer would not have inflicted the adverse employment action but for the plaintiff's protected activities.

Maddox presents evidence that differs from the evidence in *Reeves* in two important respects. First, Maddox has no evidence that any other employer was treated differently. The plaintiff in *Reeves* could identify a younger employee who was retained despite committing an arguably similar infraction. Second, the plaintiff in *Reeves* actually, and successfully, disputed the factual basis for his termination. He did not admit to falsifying records while claiming that he had a really good reason for doing so. He proved that he did not falsify records. In contrast, Maddox did not dispute that (1) she failed to take an ABG from LG, (2) no medical record documents her attempts to take an ABG from LG, or (3) that the ventilator sheets of other patients show that she was attending to other patients after receiving instructions to take an ABG from LG. Instead, Maddox argues that she was not to blame for failing to take an ABG from LG. These differences mean that *Reeves* does not dictate viewing the arguments that Maddox raised as establishing questions of material fact. Because Maddox has argued only that the facts did not justify terminating her, instead of offering evidence that she did take an ABG, this court has no reason to allow Maddox to ask a jury to second-guess CHCA's determination that failing to take an ABG justifies terminating a Respiratory Therapist.

**ORDER**

Because Maddox has not provided evidence establishing a *prima facie* case or that would allow a jury to disbelieve the legitimate non-discriminatory reason for her termination that CHCA offered, it is hereby ORDERED, that the Defendant's motion is GRANTED. Doc. 15.

SIGNED at Houston, Texas, this 25th day of September, 2006.

*[signature]*

MELINDA HARMON
UNITED STATES DISTRICT JUDGE